UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

───────────────────────────────────────────

RAYSHELL S. JOHNSON,

                Plaintiff,

v.                                        5:20-CV-1054
                                        (DNH/ML)
SYRACUSE POLICE DEP'T, all others;
and SYR. SHERIFF'S DEP'T,

                Defendants.

───────────────────────────────────────────

APPEARANCES:                                OF COUNSEL:

RAYSHELL S. JOHNSON
  Plaintiff, *Pro Se*
605 Carbon Street
Syracuse, New York 13208


MIROSLAV LOVRIC, United States Magistrate Judge


**ORDER and REPORT-RECOMMENDATION**

The Clerk has sent this *pro se* complaint (Dkt. No. 1) together with an application to

proceed *in forma pauperis* (Dkt. No. 2), filed by Rayshell S. Johnson ("Plaintiff") to the Court

for review.  For the reasons discussed below, I (1) grant Plaintiff's *in forma pauperis* application

(Dkt. No. 2) and (2) recommend that Plaintiff's Complaint (Dkt. No. 1) be dismissed in its

entirety with leave to amend.

## I.      BACKGROUND

On September 8, 2020, Plaintiff commenced this action ("*Johnson III*") by the filing of a

verified Complaint (Dkt. No. 1), and three other civil actions: (1) *Johnson v. Syracuse Police*

*Dep't, et al.*, Civil Action No. 5:20-CV-1052 (MAD/TWD) ("*Johnson I*"); (2) *Johnson v. Tucker*

*Missionary Baptist Church*, Civil Action No. 5:20-CV-1053 (DNH/ATB) ("*Johnson II*"); and (3)

*Johnson v. Syracuse Police Dep't*, Civil Action No. 5:20-CV-1055 (GTS/ML) ("*Johnson IV*").

On October 14, 2020, United States District Judge David Hurd accepted and adopted the

recommendation of United States Magistrate Judge Andrew Baxter and dismissed Plaintiff's

complaint in *Johnson II* (1) without prejudice and without leave to amend against Tucker

Missionary Baptist Church, its pastor, and its employees, and (2) without prejudice and with

leave to amend, within thirty days, against the Syracuse Police Department and/or the Sheriff's

Department. *Johnson v. Tucker Missionary Baptist Church*, 20-CV-1053, 2020 WL 6075818, at

*1 (N.D.N.Y. Oct. 14, 2020) (Hurd, J.).  Judge Baxter concluded that, with respect to Tucker

Missionary Baptist Church, "[t]here is no indication that any of the church staff acted in 'joint

activity' with the state[,] . . . [nor are there any allegations that] the church or it[]s employees

acted under color of state law."  *Johnson v. Tucker Missionary Baptist Church*, 20-CV-1053,

2020 WL 6083450, at *3 (N.D.N.Y. Sept. 15, 2020) (Baxter, M.J.).  In addition, Judge Baxter

concluded that while it is unclear whether Plaintiff intended to sue the Syracuse Police

Department or the Onondaga County Sheriff's Department, "Plaintiff cannot sue either

department as an entity" but could sue the municipality itself; however, the "conclusory

allegations . . . failed to state a constitutional claim against the City of Syracuse, the County of

Onondaga, or any individual officer working for either department."  *Johnson v. Tucker

Missionary Baptist Church*, 2020 WL 6083450, at *4.  To date, Plaintiff has not filed an

amended complaint in *Johnson II*.  (*See generally*, *Johnson II* docket sheet.)

There appears to be significant overlap in the allegations set forth in the complaints of

*Johnson I*, *Johnson II*, *Johnson III*, and *Johnson IV*.

Here, Plaintiff has filed a form-complaint pursuant to Title VII, 42 U.S.C. § 2000e-5,[1]

"for employment discrimination based on race, color, religion, sex or national origin" against the

Syracuse Police Department and the Syracuse Sheriff's Department[2] ("Defendants"). (Dkt. No.

1 at 1-2.) Plaintiff alleges that she was discriminated against based on her race or color, religion,

and sex (or sexual harassment), in that, she was not promoted and was retaliated against. (*Id*. at

2.) However, Plaintiff does not allege to have ever been employed by Defendants. (*See*

*generally* Dkt. No. 1.)

Plaintiff's Complaint is difficult to decipher. (*Id*.) Plaintiff appears to allege conduct that

occurred over an unspecified multiple-year period (Dkt. No. 1 at 3), including being (1) punched

in the nose and falsely arrested by "officer #2,"[3] (2) suspended from the use of public

transportation for a sixty-day period, and (3) her pastor stated "cause [she] didn't come back to

church."[4]  (*Id*. at 3.)

---

[1]     Plaintiff's Complaint appears to be interposed with pages from a form-complaint for
employment discrimination based on age.  As a result, the paragraphs in the Complaint are not in
numerical order and some paragraph numbers are duplicative.  Accordingly, when making
specific citations to the Complaint, the Court will refer only to the page number of the Complaint
that the reference derives from.

[2]     Although Plaintiff names the "Syracuse Sheriff's Department," the address that Plaintiff
provided for this Defendant is that of the Onondaga County Sheriff's Department.  Any
reference in the Complaint (Dkt. No. 1) to "Syracuse Sheriff's Department" shall be deemed to
refer to the "Onondaga County Sheriff's Department."  As a result, the Clerk of the Court is
directed to amend the caption to accordingly.

[3]     It is unclear whether "officer #2" is employed by the Syracuse Police Department, the
Onondaga County Sheriff's Department, or some other entity.

[4]     It is unclear what relevance this allegation has, what it was allegedly in response to, or
how it relates to Plaintiff's civil rights allegedly being violated.

Plaintiff alleges that, over an unspecified time period, she has "put in several complaints with Syr. Police Dept." and that throughout this unspecified time period "we"[5] have "been falsely arrested and beaten by City Police." (Dkt. No. 1 at 4.)[6]

Plaintiff alleges that on an unspecified date, she was verbally abused by a worker in the civic center, an officer from the Sheriff's Department asked Plaintiff to leave, and as Plaintiff was exiting, the officer "pushed" her and she "ended up on the ground." (Dkt. No. 1 at 4.)

In what appears to be a different incident, again with no date listed, Plaintiff alleges that she was riding a Centro bus and was punched in the nose by another passenger who accused Plaintiff of trying to hurt him. (*Id*. at 5.) Plaintiff alleges that she was arrested for this incident and was "given 60 days of discontinuance of not riding bus." (*Id*.)

Plaintiff alleges that she was physically and mentally abused by her pastor at Tucker Missionary Baptist Church. (*Id*.)

Plaintiff states that she feels like all her civil and constitutional rights "have been crossed," and she seeks "maximum rewards on all cases." (*Id*. at 6.)

For a more complete statement of Plaintiff's claims, refer to the Complaint. (Dkt. No. 1.)

Plaintiff also filed an application for leave to proceed *in forma pauperis*. (Dkt. No. 2.)

---

[5]     It is unclear who Plaintiff is referring to with the plural pronoun "we" because this lawsuit is brought by a singular Plaintiff who is *pro se* and therefore unable to represent anyone other than herself. *See Lattanzio v. COMTA*, 481 F.3d 137, 139 (2d Cir. 2007) (citing 28 U.S.C. § 1654) (holding that although parties have a statutory right to "plead and conduct their own cases," unlicensed laypersons may not "represent anyone else other than themselves."); *see also Guest v. Hansen*, 603 F.3d 15, 20 (2d Cir. 2010) ("A person who has not been admitted to the practice of law may not represent anybody other than himself.").

[6]     Although the paragraph of the form-complaint that this allegation is contained in is entitled "Causes of Action," Plaintiff has simply continued the facts of her Complaint in this section. The Complaint does not list any causes of action.

## II.     PLAINTIFF'S APPLICATION TO PROCEED *IN FORMA PAUPERIS*

When a civil action is commenced in a federal district court, the statutory filing fee,

currently set at $400, must ordinarily be paid.  28 U.S.C. § 1914(a).  A court is authorized,

however, to permit a litigant to proceed *in forma pauperis* status if a party "is unable to pay" the

standard fee for commencing an action.  28 U.S.C. § 1915(a)(1).[7]  After reviewing Plaintiff's

amended *in forma pauperis* application (Dkt. No. 2), the Court finds that Plaintiff meets this

standard.  Therefore, Plaintiff's application to proceed *in forma pauperis* is granted.[8]

## III.     LEGAL STANDARD FOR INITIAL REVIEW OF THE COMPLAINT

"Notwithstanding any filing fee, or any portion thereof, that may have been paid, the

court shall dismiss the case at any time if the court determines that . . . the action . . . (i) is

frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks

monetary relief against a defendant who is immune from such relief."  28 U.S.C. § 1915(e)(2).

In order to state a claim upon which relief can be granted, a complaint must contain, *inter

alia*, "a short and plain statement of the claim showing that the pleader is entitled to relief."  Fed.

R. Civ. P. 8(a)(2).  The requirement that a plaintiff "show" that he or she is entitled to relief

means that a complaint "must contain sufficient factual matter, accepted as true, to 'state a claim

to relief that is *plausible* on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (emphasis

---

[7]     The language of that section is ambiguous because it suggests an intent to limit
availability of IFP status to prison inmates.  *See* 28 U.S.C. § 1915(a)(1) (authorizing the
commencement of an action without prepayment of fees "by a person who submits an affidavit
that includes a statement of all assets such prisoner possesses").  The courts have construed that
section, however, as making IFP status available to any litigant who can meet the governing
financial criteria.  *Hayes v. United States*, 71 Fed. Cl. 366, 367 (Fed. Cl. 2006); *Fridman v. City
of N.Y.*, 195 F. Supp. 2d 534, 536 n.1 (S.D.N.Y. 2002).

[8]     Plaintiff is reminded that, although the application to proceed *in forma pauperis* has been
granted, she will still be required to pay fees that she may incur in this action, including copying
and/or witness fees.

added) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  "Determining whether a complaint states a plausible claim for relief . . . requires the . . . court to draw on its judicial experience and common sense. . . . [W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged–but it has not shown–that the pleader is entitled to relief." *Iqbal*, 556 U.S. at 679 (internal citation and punctuation omitted).

"In reviewing a complaint . . . the court must accept the material facts alleged in the complaint as true and construe all reasonable inferences in the plaintiff's favor." *Hernandez v. Coughlin*, 18 F.3d 133, 136 (2d Cir. 1994) (citation omitted).  However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions.  Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678.

Courts are "obligated to construe a pro se complaint liberally." *Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009); *see also Nance v. Kelly*, 912 F.2d 605, 606 (2d Cir. 1990) (per curiam) (reading the plaintiff's *pro se* complaint "broadly, as we must" and holding that the complaint sufficiently raised a cognizable claim).  "[E]xtreme caution should be exercised in ordering sua sponte dismissal of a pro se complaint before the adverse party has been served and [the] parties . . . have had an opportunity to respond." *Anderson v. Coughlin*, 700 F.2d 37, 41 (2d Cir. 1983).

The Court, however, also has an overarching obligation to determine that a claim is not legally frivolous before permitting a *pro se* plaintiff's complaint to proceed.  *See, e.g., Fitzgerald v. First East Seventh St. Tenants Corp.*, 221 F.3d 362, 363 (2d Cir. 2000) (holding that a district court may *sua sponte* dismiss a frivolous complaint, notwithstanding the fact that the plaintiff paid the statutory filing fee).  "Legal frivolity . . . occurs where 'the claim is based on an

6

indisputably meritless legal theory [such as] when either the claim lacks an arguable basis in law, or a dispositive defense clearly exists on the face of the complaint." *Aguilar v. United States*, 99-MC-0304, 99-MC-0408, 1999 WL 1067841, at \*2 (D. Conn. Nov. 8, 1999) (quoting *Livingston v. Adirondack Beverage Co.*, 141 F.3d 434, 437 (2d Cir. 1998)); *see also Neitzke v. Williams*, 490 U.S. 319, 325 (1989) ("[D]ismissal is proper only if the legal theory . . . or factual contentions lack an arguable basis."); *Pino v. Ryan*, 49 F.3d 51, 53 (2d Cir. 1995) ("[T]he decision that a complaint is based on an indisputably meritless legal theory for purposes of dismissal under section 1915(d), may be based upon a defense that appears on the face of the complaint.").

## IV.    ANALYSIS

In addressing the sufficiency of a plaintiff's complaint, the court must construe his pleadings liberally. *Sealed Plaintiff v. Sealed Defendant*, 537 F.3d 185, 191 (2d Cir. 2008). Having reviewed Plaintiff's Complaint with this principle in mind, I recommend that Plaintiff's Complaint (Dkt. No. 1) be dismissed in its entirety.

### A.    Title VII

To the extent that Plaintiff attempts to assert any claim pursuant to Title VII of the Civil Rights Act, as amended, I recommend that the Court dismiss those claims for two reasons.

First, individuals may bring Title VII claims in federal court only after filing a timely charge with the Equal Employment Opportunity Commission ("EEOC") and receiving an EEOC right-to-sue letter. 42 U.S.C. § 2000e-5(e), (f); *see Legnani vv. Alitalia v. Linee Aeree Italiane, S.P.A.*, 274 F.3d 683, 686 (2d Cir. 2001) ("Under . . . Title VII . . ., a claimant may bring suit in federal court only if she has filed a timely complaint with the EEO and obtained a right-to-sue letter."). "Administrative exhaustion is an essential element of Title VII's . . . statutory scheme,

the purpose of which is to avoid unnecessary judicial action by the federal courts by '[giving] the

administrative agency the opportunity to investigate, mediate, and take remedial action.'"

*Johnson v. Xylem Inc.*, 19-CV-0130, 2020 WL 1963125, at *2 (W.D.N.Y. Apr. 16, 2020)

(quoting *Stewart v. United States Immigration & Naturalization Serv.*, 762 F.2d 193, 198 (2d

Cir. 1985)). The Second Circuit has held that exhaustion "is a precondition to bringing a Title

VII claim in federal court rather than a jurisdictional requirement." *Francis v. City of New York*,

235 F.3d 763, 768 (2d Cir. 2000) (citation omitted).

Plaintiff left blank the portion of the form-complaint where she was to indicate that she

"filed charges with the New York State Division on Human Rights or the New York City

Commission on Human Rights regarding the alleged discriminatory acts." (Dkt. No. 1 at 3; *but

see* Dkt. No. 1 at 5 [stating "9-17-9-3-2020"].) Plaintiff also left blank the portion of the form-

complaint where she was to indicate that she "filed a Notice of Intent with the Equal

Employment Opportunity Commission." (Dkt. No. 1 at 3; Dkt. No. 1 at 5.) "Further, a right-to-

sue letter is not attached to Plaintiff's Complaint. Accordingly, Plaintiff's Title VII . . . claims

must be dismissed on the basis that the right-to-sue letter is a precondition to bringing [the]

claims in federal court." *Xylem Inc.*, 2020 WL 1963125, at *2 (citing *Constantine v. U-Haul

Int'l, Inc.*, 15-CV-1204, 2015 WL 7272211, at *2 (N.D.N.Y. Nov. 16, 2015) (D'Agostino, J.)

(dismissing the plaintiff's Title VII claim where the plaintiff failed to demonstrate that she

received an EEOC right-to-sue letter); *Parker v. Mack*, 09-CV-1049A, 2010 WL 11507368, at

*3 (W.D.N.Y. Jan. 4, 2010) (holding that the plaintiff's Title VII claims were subject to

dismissal where the plaintiff did not submit a copy of his EEOC right-to-sue letter)).

Second, Title VII provides that "[i]t shall be unlawful employment practice for an

employer . . . to fail or refuse to hire or to discharge any individual, or otherwise to discriminate

against any individual with respect to his compensation, terms, conditions, or privileges of

employment, because of such individual's race, color, religion, sex or national origin." 42

U.S.C. § 2000e-2(a); *see Vega v. Hempstead Union Sch. Dist.*, 801 F.3d 72, 86 (2d Cir. 2015) (A

plaintiff asserting a Title VII discrimination claim must allege facts showing that "(1) the

employer took adverse action against him and (2) his race, color, religion, sex, or national origin

was a motivating factor in the employment decision."). Plaintiff does not allege that she is or

was an employee of Defendants. (Dkt. No. 1.) As a result, Plaintiff fails to state a claim upon

which relief may be granted pursuant to Title VII. *Jones v. Thomas*, 20-CV-5581, 2020 WL

5077026, at *4 (S.D.N.Y. Aug. 27, 2020) (dismissing for failure to state a claim, the plaintiff's

claims pursuant to Title VII where the plaintiff did not allege that he is or was an employee of

any of the defendants); *Basora-Jacobs v. Palevsky*, 20-CV-1675, 2020 WL 3868710, at *2

(E.D.N.Y. July 10, 2020) (dismissing the plaintiff's Title VII claims because "[t]he complaint

does not list Plaintiff's employer as a defendant in the case caption.").

**B.     Civil Rights Pursuant to 42 U.S.C. § 1983**

To the extent that Plaintiff intended to assert claims pursuant to 42 U.S.C. § 1983, I

recommend that those claims also be dismissed.

"'[D]epartments that are merely administrative arms of a municipality do not have a legal

identity separate and apart from the municipality and, therefore, cannot be sued.'" *Burris v.*

*Nassau Cnty. District Attorney*, 14-CV-5540, 2017 WL 9485714, at *4 (E.D.N.Y. Jan. 12, 2017)

(quoting *Harris v. Nassau Cnty.*, 13-CV-4728, 2016 WL 3023265, at *12 (E.D.N.Y. May 24,

2016) (dismissing claims against the Nassau County Police Department because it is an

administrative arm of the municipality of Nassau County)) (also citing *Pooler v. Hempstead*

*Police Dep't*, 897 F. Supp. 2d 12, 21 (E.D.N.Y. 2012)) (dismissing claims against Hempstead

Police Department and holding that the Hempstead Police Department is an "administrative arm"

of the Village of Hempstead); *Davis v. Lynbrook Police Dep't*, 224 F. Supp. 2d 463, 477

(E.D.N.Y. 2002) (dismissing claims against Lynbrook Police Department); *Wilson v. City of New*

*York*, 800 F. Supp. 1098, 1101 (E.D.N.Y. 1992) ("The court also dismisses the claims against the

New York City Police Department which cannot be sued independently because it is an agency

of the City of New York")).

While Plaintiff could sue the municipalities—the City of Syracuse and Onondaga

County—themselves, rather than one of their "departments," a municipality may only be named

as a defendant in certain circumstances.  A municipality may not be held liable solely because it

employs a tortfeasor.  *Los Angeles Cnty., Cal. v. Humphries*, 562 U.S. 29, 36 (2010). Only when

the municipality, through the execution of its policies, actually deprives an individual of his

constitutional rights, is it liable for the injury.  *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694

(1978).

To establish municipal liability, the policy must actually cause the violation of

constitutional rights; it must be the moving force behind the violation.  *Monell*, 436 U.S. at 694;

*Dominguez v. Beame*, 603 F.2d 337, 341 (2d Cir. 1979).  Official policy includes the decisions of

a government's lawmakers, the acts of policymaking officials, and practices that are so

widespread as to "practically have the force of law."  *Connick v. Thompson*, 563 U.S. 51, 61

(2011).  Municipal liability may also be shown by establishing that a policymaking official

ordered or ratified the employees' actions either expressly or tacitly.

Finally, municipal liability can, under limited circumstances, be based upon a failure to

properly train the municipality's employees.  *Connick*, 563 U.S. at 61.  However, municipal

liability is most tenuous when a claim turns on the failure to train.  *Id.* (citing *Oklahoma City v.*

*Tuttle*, 471 U.S. 808, 822-23 (1985) (plurality opinion) ("[A] 'policy' of 'inadequate training'" is "far more nebulous, and a good deal further removed from the constitutional violation, than was the policy in *Monell*")).  To satisfy the statute, a municipality's failure to train its employees must amount to "'deliberate indifference to the rights of persons with whom the [untrained employees] come into contact.'"  *Id.* (quoting *City of Canton, Ohio v. Harris*, 489 U.S. 378, 388 (1989)).

The Complaint is overly vague and claims only that (1) Plaintiff has been making unspecified "complaints" against the Syracuse Police Department, (2) on an unspecified date "officer #2" punched her in the nose and falsely arrested her, (3) on an unspecified date an officer pushed her and she "ended up on the ground," and (4) on an unspecified date she was punched in the nose by a "young man" while riding the Centro bus (although, there are no other facts describing this incident or what any police officer or officers may have done).

"[C]omplaints relying on the civil rights statutes are insufficient unless they contain some specific allegations of fact indicating a deprivation of rights, instead of a litany of general conclusions that shock but have no meaning." *Barr v. Abrams*, 810 F.2d 358, 363 (2d Cir. 1987) (citing *Ostrer v. Aronwald*, 567 F.2d 551, 553 (2d Cir. 1977); *Koch v. Yunich*, 533 F.2d 80, 85 (2d Cir. 1976); *Powell v. Jarvis*, 460 F.2d 551, 553 (2d Cir. 1972)).  Plaintiff's conclusory allegations in this case have failed to state a constitutional claim against the City of Syracuse, the County of Onondaga, or any individual officer working for either department.

As a result, I recommend dismissal of Plaintiff's Complaint against Defendants.[9]

---

[9]     To the extent that Plaintiff attempts to assert any claims against Tucker Missionary Baptist Church, its pastor, or its employees, I recommend that those claims also be dismissed.  In order to bring a civil rights action under 42 U.S.C. § 1983, the plaintiff must establish that a defendant, who acts under color of state law, has caused the deprivation of a right protected by the federal constitution or laws.  42 U.S.C. § 1983.  A person acts under color of state law when

### V.    OPPORTUNITY TO AMEND

Generally, a court should not dismiss claims contained in a complaint filed by a *pro se*

litigant without granting leave to amend at least once "when a liberal reading of the complaint

gives any indication that a valid claim might be stated."  *Branum v. Clark*, 927 F.2d 698, 704-05

(2d Cir. 1991); *see also* Fed. R. Civ. P. 15(a)(2) ("The court should freely give leave when

justice so requires.").  An opportunity to amend is not required, however, where "the problem

with [the plaintiff's] causes of action is substantive" such that "better pleading will not cure it."

*Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000); *see also Cortec Indus. Inc. v. Sum Holding*

*L.P.*, 949 F.2d 42, 48 (2d Cir. 1991) ("Of course, where a plaintiff is unable to allege any fact

sufficient to support its claim, a complaint should be dismissed with prejudice.").  Stated

differently, "[w]here it appears that granting leave to amend is unlikely to be productive, . . . it is

---

he or she acts in his or her official capacity, "clothed with the authority of state law," or acts
under "pretense" of law by purporting to act with official power.  *Pleasure Island, Inc. v. City of*
*New York*, 12-CV-4699, 2013 WL 2311837, at *5-6 (E.D.N.Y. May 24, 2013) (quoting *West v.*
*Atkins*, 487 U.S. 42, 49 (1988)).

The requirement that the defendant acted under "color of state law" is jurisdictional.
*Lucas v. Riggi*, 07-CV-6200, 2008 WL 4758706, at *2 (W.D.N.Y. Oct. 29, 2008) (citing *Polk*
*Cnty. v. Dodson*, 454 U.S. 312, 315 (1981)).  Private conduct is simply beyond the reach of
section 1983 "'no matter how discriminatory or wrongful' that conduct may be." *Lucas,* 2008
WL 4758706, at *1 (quoting *Am. Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 49-50 (1999)).  A
private party may act under color of state law if he or she engages in conduct that constitutes
willful participation in joint activity with the state.  *Sybalski v. Indep. Grp. Home Living*
*Program, Inc.*, 546 F.3d 255, 257 (2d Cir. 2008) (per curiam).  The nexus to the state must be so
close as to be fairly treated as that of the state itself.  *Tancredi v. Metro Life Ins. Co.,* 316 F.3d
308, 312 (2d Cir. 2003) (citations omitted).

Tucker Missionary Baptist church, its pastor, and its employees do not act under color of
state law and are not proper defendants pursuant to 42 U.S.C. § 1983. *Johnson*, 2020 WL
6083450, at *3.  Moreover, the Complaint does not contain facts plausibly alleging that Tucker
Missionary Baptist Church, its pastor, or its employees, acted in "joint activity" with the state.
As a result, to the extent that Plaintiff attempts to assert any claims against Tucker Missionary
Baptist Church, its pastor, and its employees, I recommend that those claims be dismissed.

12

not an abuse of discretion to deny leave to amend." *Ruffolo v. Oppenheimer & Co.*, 987 F.2d

129, 131 (2d Cir. 1993); *accord, Brown v. Peters*, 95-CV-1641, 1997 WL 599355, at *1

(N.D.N.Y. Sept. 22, 1997) (Pooler, J.).[10]

This Court has serious doubts about whether Plaintiff can amend to assert actionable

claims against Defendants.  However, I am unable to conclude with complete certainty that if

permitted leave to amend the complaint, Plaintiff could not assert plausible claims pursuant to

Title VII or other civil rights causes of action against Defendants.  Accordingly, I recommend

that leave to amend be granted.

If Plaintiff chooses to file an amended complaint, she should note that the law in this

circuit clearly provides that "'complaints relying on the civil rights statutes are insufficient

unless they contain some specific allegations of fact indicating a deprivation of rights, instead of

a litany of general conclusions that shock but have no meaning.'" *Hunt v. Budd*, 895 F. Supp.

35, 38 (N.D.N.Y. 1995) (McAvoy, J.) (quoting *Barr v. Abrams*, 810 F.2d 358, 363 (2d Cir.

1987)); *accord Pourzancvakil v. Humphry*, 94-CV-1594, 1995 WL 316935, at *7 (N.D.N.Y.

May 22, 1995) (Pooler, J.).  Therefore, in any amended complaint, Plaintiff must clearly set forth

facts that give rise to the claims, including the dates, times, and places of the alleged underlying

acts, and each individual who committed each alleged wrongful act.  In addition, the revised

pleading should allege facts demonstrating the specific involvement of any of the named

defendants in the constitutional deprivations alleged in sufficient detail to establish that they

---

[10]     *See also Carris v. First Student, Inc.*, 132 F. Supp. 3d 321, 340-41 n.1 (N.D.N.Y. 2015)
(Suddaby, C.J.) (explaining that the standard set forth in *Gomez v. USAA Fed. Sav. Bank*, 171
F.3d 794, 796 (2d Cir. 1999)—that the Court should grant leave to amend "unless the court can
rule out any possibility, however unlikely it might be, that an amended complaint would be
successful in stating a claim"—is likely not an accurate recitation of the governing law after *Bell
Atl. Corp. v. Twombly*, 550 U.S. 544 (2007)), *rev'd on other grounds*, 682 F. App'x 30.

were tangibly connected to those deprivations. *Bass v. Jackson*, 790 F.2d 260, 263 (2d Cir.

1986).  Finally, Plaintiff is informed that any such amended complaint will replace the existing

Complaint, and must be a wholly integrated and complete pleading that does not rely upon or

incorporate by reference any pleading or document previously filed with the Court. *See Shields*

*v. Citytrust Bancorp, Inc.*, 25 F.3d 1124, 1128 (2d Cir. 1994) ("It is well established that an

amended complaint ordinarily supersedes the original and renders it of no legal effect.").

ACCORDINGLY, it is

ORDERED that Plaintiff's application to proceed *in forma pauperis* (Dkt. No. 2) is

GRANTED; and it is further

ORDERED that the Clerk of the Court is directed to amend the docket such that

Defendant "Syracuse Sheriff's Dept." is changed to Defendant "Onondaga County Sheriff's

Department;" and it is further respectfully

RECOMMENDED that the Court DISMISS WITH LEAVE TO REPLEAD

Plaintiff's Complaint (Dkt. No. 1), for failure to state a claim pursuant to 28 U.S.C. §

1915(e)(B); and it is further

ORDERED that the Clerk of the Court shall file a copy of this Order and Report-

Recommendation on Plaintiff, along with copies of the unpublished decisions cited herein in

accordance with the Second Circuit's decision in *Lebron v. Sanders*, 557 F.3d 76 (2d Cir. 2009)

(per curiam).

NOTICE: Pursuant to 28 U.S.C. § 636(b)(1), the parties have fourteen days within

which to file written objections to the foregoing report.[11]  Such objections shall be filed with the

---

[11]     If you are proceeding *pro se* and served with this report, recommendation, and order by mail, three additional days will be added to the fourteen-day period, meaning that you have seventeen days from the date that the report, recommendation, and order was mailed to you to

Clerk of the Court.  **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN**

**DAYS WILL PRECLUDE APPELLATE REVIEW**.  28 U.S.C. § 636(b)(1) (Supp. 2013);

Fed. R. Civ. P. 6(a), 6(d), 72; *Roldan v. Racette*, 984 F.2d 85 (2d Cir. 1993) (citing *Small v.*

*Sec'y of Health and Human Servs.*, 892 F.2d 15 (2d Cir. 1989)).

Dated:  November  6  , 2020
       Binghamton, New York

Miroslav Lovric
U.S. Magistrate Judge

---

serve and file objections.  Fed. R. Civ. P. 6(d).  If the last day of that prescribed period falls on a Saturday, Sunday, or legal holiday, then the deadline is extended until the end of the next day that is not a Saturday, Sunday, or legal holiday.  Fed. R. Civ. P. 6(a)(1)(C).